IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER FABY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No.   ADC-19-3337 |
| | * | |
| CSX TRANSPORTATION, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Defendant, CSX Transportation, Inc. ("Defendant"), moves this Court to dismiss Counts I and II of Plaintiff Christopher Faby's Complaint for respondeat superior and direct negligence under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* (the "Motion to Dismiss") (ECF No. 23). Within his Response, Plaintiff moved to file an Amended Complaint (ECF No. 26). After considering the Motions and the responses thereto (ECF Nos. 23, 26, 31), the Court finds no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018). For the reasons stated herein the Court GRANTS Defendant's Motion to Dismiss. Additionally, the Court DENIES Plaintiff's Motion to File an Amended Complaint as futile.

**FACTUAL BACKGROUND**

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the challenged complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Plaintiff is an engineer who was employed by Defendant. ECF No. 1 at 2, ¶ 4. Plaintiff was the regular engineer on an assignment running from Sealston, Virginia, to Jessup, Maryland, and back again (the "Route"). *Id.* at 2, ¶ 7. On April 26, 2018, the regular conductor for the Route was unavailable, and Michael Shoemaker was assigned to be conductor, a role he had performed for the Route

several times before. *Id.* Mr. Shoemaker is a Marine veteran, and he trained as a boxer both while in service and afterward. *Id.* at 6, ¶ 19. The Route was officially scheduled to begin at 6:00 p.m., but it was customary to begin it at 5:00 p.m. so the train hit optimal traffic patterns. *Id.* at 3, ¶ 8. On April 26, 2018, Mr. Shoemaker did not arrive to begin the Route at 5:00 p.m., but after Plaintiff texted Mr. Shoemaker several times, Mr. Shoemaker arrived at approximately 5:34 p.m. *Id.* at 3, ¶ 9.

Once Mr. Shoemaker arrived, he and Plaintiff prepared the train for departure. *Id.* at 3, ¶ 10. Although preparing the train is the responsibility of the conductor, because Plaintiff regularly worked on the Route, he suggested "a more efficient way to make up the train," which seemed to agitate Mr. Shoemaker. *Id.* at 3, ¶¶ 10–11. Mr. Shoemaker, however, was no longer agitated during the trip from Virginia to Maryland, and the trip was uneventful. *Id.* at 3, ¶ 12. Once the train arrived in Maryland, Mr. Shoemaker was responsible for directing the placement of the railroad cars within the applicable clearance points on the tracks and for protecting any shove movements. *Id.* at 4, ¶ 13. While Mr. Shoemaker was switching the railroad cars, Plaintiff was also relying on him to direct the movement of the train by instructing Plaintiff where to stop the train. *Id.* at 4, ¶ 14. Generally, Plaintiff would not be able to see the conductor while the conductor was directing the train movements; however, not only was Plaintiff able to see Mr. Shoemaker while he was supposed to be directing the shove movements, he also saw that one of the railroad cars was improperly beyond the clearance point. *Id.* at 4, ¶ 15. Plaintiff alleges that Mr. Shoemaker's improper position and the railroad car's placement beyond the clearance point are "significant violations of railroad rules." *Id.* at 5, ¶ 15. Plaintiff radioed Mr. Shoemaker "and told him that the situation had to be rectified." *Id.* at 5, ¶ 16. Plaintiff alleges Mr. Shoemaker became upset and agitated Plaintiff "criticized" his job performance. *Id.*

Once Mr. Shoemaker completed his responsibilities correctly, he got back in the cab of the train to return to Virginia. *Id.* at 5, ¶ 17. Plaintiff observed that Mr. Shoemaker was still "clearly upset about being told what to do," and Plaintiff told Mr. Shoemaker "no other conductor would have left the railroad cars in the foul beyond the clearance point and that they could both be fired if it was left that way." *Id.* In response, Mr. Shoemaker did not calm down as he had on the first leg of the Route. *Id.* at 5, ¶ 18. While Plaintiff was operating the train, Mr. Shoemaker struck Plaintiff in the left eye with his fist without warning; as Plaintiff put his hands over his face, Mr. Shoemaker continued to strike him in the head approximately ten to fifteen more times. *Id.* at 5–6, ¶ 18. Plaintiff experienced blurry vision and disorientation as a result. *Id.* Mr. Shoemaker appeared to calm down after striking Plaintiff, and he did not speak to or touch Plaintiff during the rest of the Route. *Id.* at 6, ¶ 19. Plaintiff did not contact anyone until the train stopped in Sealston, Virginia, at which point Mr. Shoemaker exited the train and Plaintiff contacted the crew caller to request he be marked off work. *Id.* at 6, ¶ 20.

Plaintiff did not tell anyone employed by Defendant of the incident with Mr. Shoemaker until an unspecified time not more than four days after the event. *Id.* at 6, ¶ 21; *see also* ECF No. 26 at 7. Plaintiff attended a previously scheduled cardiac stress test with a physician, after which he contacted his union representative to report the incident. ECF No. 1 at 6, ¶ 21. He became ill after the medical appointment, and he went to the hospital, where he called William Smith, a management representative for Defendant. *Id.* Mr. Smith met Plaintiff at the hospital after he was released. *Id.* Plaintiff alleges Mr. Smith asked him if he would refrain from reporting the incident with Mr. Shoemaker, and that Mr. Smith told Plaintiff if he did report the incident Plaintiff would experience "a long dark road." *Id.* at 7, ¶ 22. Plaintiff insisted on officially reporting the incident and completed the relevant documentation. *Id.*

**PROCEDURAL BACKGROUND**

On November 20, 2019, Plaintiff filed the Complaint against Defendants in this Court. ECF No. 1.[1] On January 13, 2020, Defendants filed their Partial Motion to Dismiss. ECF No. 23. Plaintiff filed a Response in Opposition on January 28, 2020, in which he also moved to file an Amended Complaint. ECF No. 26. On February 19, 2020, Defendant replied and opposed Plaintiff's request to file an Amended Complaint. ECF No. 31. This matter is now fully briefed, and the Court has reviewed Defendant's Motion and the responses thereto.

**DISCUSSION**

**A. Standard of Review**

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As stated in *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked

---

[1] On December 31, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of all parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

4

assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

### B. Defendant's Motion to Dismiss

In his three-Count Complaint, Plaintiff brings a claim for respondeat superior under FELA in Count I and a claim for direct negligence under FELA in Count II. Defendant argues in its Motion to Dismiss that Plaintiff cannot sustain either of his FELA claims. The Court agrees with Defendant and will address each Count in turn.

"FELA provides the exclusive remedy for railroaders who are injured because of an employer's negligence while the employee is working in interstate commerce." *Miller v. CSX Transp., Inc.*, No. GJH-18-2022, 2019 WL 1992105, at *2 (D.Md. May 3, 2019) (first citing *Wabash R.R. Co. v. Hayes*, 234 U.S. 86, 89 (1914), then citing *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1442 n.2 (4th Cir. 1993)). FELA "does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur." *CSX Transp., Inc. v. Miller*, 159 Md.App. 123, 133 (2004) (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994)). "A FELA suit can be successfully pursued by an employee only if there is proof of some negligence on the part of the railroad." *Id.* at 135. The railroad's negligence "must be 'in whole or in part' the cause of the [employee's] injury." *Id.* (quoting *Ellis v. Union Pac. R.R. Co.*, 329 U.S. 649, 653 (1947)). When a FELA action concerns an intentional tort, a plaintiff can prevail "'by showing either that the intentional tort was committed in furtherance of the employer's objectives or that the employer was negligent in hiring, supervising, or failing to fire the employee.'" *Higgins v. Metro-North R.R. Co.*, 318 F.3d 422, 425

(2d Cir. 2003) (quoting *Lancaster v. Norfold & W. Ry. Co.*, 773 F.2d 807, 818 (7th Cir. 1985)). "But where one employee assaults another employee for the sole purpose of satisfying his own temper or spite, the employer cannot be held liable for such a wanton act." *Sowards v. Chesapeake & Ohio Ry. Co.*, 580 F.2d 713, 715 (4th Cir. 1978) (per curiam).

> 1. *Plaintiff Cannot Sustain His Respondeat Superior Claim Because Mr. Shoemaker Was Not Acting Within the Scope of His Employment.*

Defendant first seeks to dismiss Plaintiff's FELA respondeat superior claim in Count I. Under FELA, to sustain a claim for respondeat superior against an employer for a fellow employee's intentional tort against him, a plaintiff must show "the intentional wrong was perpetrated within the fellow employee's scope of employment and in furtherance of the employer's business." *Sowards*, 580 F.2d at 715 (internal citations omitted). In FELA cases, "scope of employment" retains its common law definition. *Wilson v. Chicago, Milwaukee, St. Paul, and Pac. R.R. Co.*, 841 F.2d 1347, 1352 (7th Cir. 1988) (citing *Chesapeake & Ohio Ry. Co. v. Kuhn*, 284 U.S. 44, 46 (1931)) ("To define 'scope of employment,' a federal court should apply common law principles, as interpreted by other federal courts."). The focus of the inquiry into the injury-causing employee's behavior is "whether it appears the alleged tortfeasor was attempting to act in furtherance of the employer's business, or, instead was motivated solely by personal interests, such as delight in cruelty, with no potential benefit to the employer." *Kelly v. Metro-North Commuter R.R.*, 37 F.Supp.2d 233, 239 (S.D.N.Y. 1999) (quoting *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 83 (2d Cir. 1989)). Ultimately, "no liability attaches when an employee acts 'entirely upon his own impulse, for his own amusement, and for no purpose of or benefit to the defendant employer.'" *Murphy v. Metro. Transp. Auth.*, 548 F.Supp.2d 29, 40 (S.D.N.Y. 2008) (quoting *Gallose*, 878 F.2d at 83). In FELA cases, whether an action is within the scope of employment is usually a question for the jury; however, a court may determine the scope of

employment "only when it is clear that 'reasonable men could not reach differing conclusions.'" *Id.* (quoting *Baker v. Texas & Pac. Ry. Co.*, 359 U.S. 227, 228 (1959)).

Here, no reasonable person could conclude Mr. Shoemaker was acting within the scope of his employment when he struck Plaintiff. When Mr. Shoemaker struck Plaintiff in the eye, Plaintiff was actively operating a train. ECF No. 1 at 5–6, ¶¶ 18–19. During the attack, Plaintiff left the train unattended, possibly allowed the train to go over the legal speed, and experienced blurry vision and disorientation. *See id.* Not only did the distraction Mr. Shoemaker caused Plaintiff force Plaintiff to temporarily abandon operating the train, it also may have caused the train to break speed laws. No reasonable person could find that Mr. Shoemaker's assault on an employee actively operating a train could be in furtherance of his railroad employer's interests. *See Kelly*, 37 F.Supp.2d at 239.

Furthermore, the factual allegations in Plaintiff's Complaint support the conclusion that Mr. Shoemaker was acting solely in his personal interest by striking Plaintiff for criticizing his job performance. *See* ECF No. 1 at 5, ¶ 18 ("Shoemaker continued to appear enraged about the criticism of his work performance and did not calm down as he did earlier in Virginia"). Even though Mr. Shoemaker's anger was in response to Plaintiff's comments on his work, Mr. Shoemaker's committed his actions "entirely upon his own impulse, for his own [satisfaction], and for no purpose of or benefit to the defendant employer." *Murphy*, 548 F.Supp.2d at 40. Ultimately, Mr. Shoemaker's attack on Plaintiff while Plaintiff was operating a train posed a danger to the safety of both men and to Defendant's train, and such an attack could not have been within the scope of Mr. Shoemaker's employment. Because Mr. Shoemaker's attack was not within the scope of his employment for Defendant, Defendant cannot be vicariously liable to Plaintiff for Mr. Shoemaker's actions. Accordingly, Defendant's Motion to Dismiss is granted as to Count I.

> 2. *Plaintiff Cannot Sustain His Direct Negligence Claim Because He Does Not Properly Allege Mr. Shoemaker's Attack Was Foreseeable.*

Defendant next seeks to dismiss Plaintiff's FELA direct negligence claim in Count II. Under FELA, to sustain a claim for negligence against an employer, a plaintiff must demonstrate that his employer had a duty to provide the plaintiff with a safe workplace and the employer breached that duty causing the plaintiff's injuries. *Brown v. CSX Transp., Inc.*, 18 F.3d 245, 249 (4th Cir. 1994). An employer's duties to its employees "includes inspecting the workplace and taking reasonable precautions to protect employees from possible harm." *Id.* (citing *Cazad v. Chesapeake & Ohio Ry. Co.*, 622 F.2d 72, 75 (4th Cir. 1980)). To sustain a claim for FELA direct negligence, however, it is essential that the harm plaintiff experienced was reasonably foreseeable. *Gallick v. Balt. & Ohio. R.R.*, 372 U.S. 108, 117 (1963). For intentional torts, "if the employer could reasonably foresee that plaintiff would be assaulted, it is negligence to fail to prevent the assault whether or not the assault was intentional or criminal misconduct." *Sowards*, 580 F.2d at 715 (citing *Harrison v. Missouri Pac. R.R. Co.*, 372 U.S. 248 (1963)). The element of foreseeability is diminished by lack of evidence of previous, similar occurrences. *See Inman v. Balt. & Ohio R.R. Co.*, 361 U.S. 138, 140 (1959).

Here, Mr. Shoemaker's attack on Plaintiff was not reasonably foreseeable. Though Plaintiff remarks several times throughout his Complaint and Response that Mr. Shoemaker had a history of violence and that Defendant was aware of this history, he provides no properly alleged facts or examples to support these assertions. For example, in Plaintiff's Complaint he states, "Defendant knew or should have known that Shoemaker had an anger management problem and that it was likely he would act irrationally and dangerously while at work and pose a danger to his co-workers." ECF No. 1 at 9, ¶ 33. Plaintiff provides no facts to support his assertion Mr. Shoemaker had a history with anger management or was involved in any prior confrontations or attacks about

which Defendant could have known. Plaintiff also states in his Complaint that because Mr. Shoemaker was trained as a boxer while serving in the Marines, "Defendant knew or should have known that Shoemaker presented a particular danger to its employees, including Plaintiff, in the likely and foreseeable event that he lost his temper and posed a danger to the well-being of his co-workers." *Id.* Plaintiff utterly fails to clarify how Mr. Shoemaker's history as a boxer in the Marines correlates with his alleged "anger management problem" or his alleged inability to control his temper. He also fails to clarify how Mr. Shoemaker's history as a boxer in the Marines causes the possibility of him losing his temper to be "likely and foreseeable." In Plaintiff's Response to Defendant's Motion to Dismiss, he again argues he properly alleged Mr. Shoemaker had "an anger management and temper problem" and had worked for Defendant "for a significant amount of time," yet still failed to identify any prior incidents—either at work or outside of work—involving Mr. Shoemaker supporting these assertions. ECF No. 26-1 at 32.

In arguing that he did properly allege sufficient facts to support a claim of negligence, Plaintiff cites to seven cases, including one from this Court, he contends contain allegations "no different" from the allegations in his own Complaint. *See* ECF No. 26-1 at 25–32. After reviewing the cases cited, the Court disagrees that any are similar to Plaintiff's. An employee's own conclusory allegations, absent proof of specific facts, [are not] sufficient to support a rational inference of negligence. *Hurley v. Patapsco & Black Rivers R.R. Co.*, 888 F.2d 327, 329 (4th Cir. 1989). Furthermore, a complaint does not properly support a claim "if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. Plaintiff fails to identify any previous incidents involving Mr. Shoemaker's alleged short temper or anger management issues. Because there is no sign of previous incidents involving Mr. Shoemaker, Defendant could not have

reasonably foreseen that Mr. Shoemaker would attack Plaintiff while they were working together. Accordingly, Defendant's Motion to Dismiss is granted as to Count II.

### C. Plaintiff's Motion to File an Amended Complaint

Within Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, Plaintiff moves to file an Amended Complaint, which he attached to his Response as an Exhibit alongside a redlined copy. *See* ECF No. 26 at 39; *see also* ECF Nos. 26-3, 26-4. Defendant initially respond to this proposed amendment by arguing it is improper for Plaintiff to attempt to amend his Complaint in a responsive filing. ECF No. 31 at 4–5. Quoting an Opinion I authored, Defendant argues, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Gelin v. Balt. Cty., Md.*, No. ADC-16-3694, 2019 WL 1546849, at *4 (D.Md. Apr. 9, 2019) (quoting *Yesko v. Fell*, No. ELH-13-3927, 2014 WL 4406849, at *7 (D.Md. Sept. 5, 2014)). On its face this quote appears to support Defendant's position; however, in that case, the defendants were attempting to supplement a third-party complaint with facts not included in the original complaint without moving for leave of the court to do so. *See id.* (finding that the defendants could not support a claim for indemnification with the facts in the complaint). Here, while Plaintiff did not file a separate motion seeking to amend his Complaint, he did still properly ask for leave of the court to file an Amended Complaint and attached the appropriate supporting documents. ECF No. 26 at 39; ECF Nos. 26-3, 26-4. Under Federal Rule of Civil Procedure 15(a)(2), courts should freely give plaintiffs leave to amend "when justice so requires," which the Fourth Circuit has interpreted to mean "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).

While the Court may consider Plaintiff's Motion for Leave to Amend as it was filed, the Court ultimately finds the amendment would be futile. Regarding Plaintiff's respondeat superior claim, Plaintiff provides several additional paragraphs detailing Mr. Shoemaker's responsibilities as a conductor. *See* ECF No. 26-4 at 4, ¶ 8; 7, ¶ 20. Plaintiff also includes two paragraphs that purport to assert Mr. Shoemaker's motive for the attack, stating Mr. Shoemaker was angry that Plaintiff criticized his work over a public radio and attacked Plaintiff to "reassert his authority." *Id.* at 6, ¶ 18; 7–8, ¶ 22. None of these new paragraphs support Plaintiff's claim for respondeat superior. In fact, the paragraphs regarding Mr. Shoemaker's responsibilities as conductor actually contradict Plaintiff's claim. In particular, Plaintiff alleges that during the second leg of the Route, during which the attack took place, Mr. Shoemaker was responsible "for keeping a lookout for train signals and obstructions on the track, as well as maintaining radio communication with dispatch." *Id.* at 7, ¶ 20. While Plaintiff was operating the train, Mr. Shoemaker also had job responsibilities he was supposed to perform, which he abandoned when he struck Plaintiff in the face. When Mr. Shoemaker abandoned his responsibilities to attack Plaintiff for the purpose of satisfying his own anger, he could not have been acting in furtherance of his employer's business. *See Sowards*, 580 F.2d at 715. Accordingly, Plaintiff's proposed amendments to Count I of his Complaint would be futile.

Regarding Plaintiff's direct negligence claim, Plaintiff provides four additional paragraphs regarding Mr. Shoemaker's alleged anger management issues. *See* ECF No. 26-4 at 11, ¶¶ 37–40. Plaintiff baldly asserts that Defendant's other employees witnessed Mr. Shoemaker exhibiting temper issues, that Defendant received written and/or oral reports involving negative behavior by Mr. Shoemaker, that Defendant's employees witnessed Mr. Shoemaker reacting poorly to criticism of his work, and that Mr. Shoemaker has a history of prior assaults. Plaintiff has not identified who

observed these alleged incidents, when they occurred, where they occurred, or any other factual information supporting these assertions. A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678. Plaintiff's proposed new paragraphs contain many conclusory assertions regarding Mr. Shoemakers alleged past behavior, but none of these conclusions are supported by well-plead facts. Accordingly, Plaintiff's proposed amendments to Count II of his Complaint would be futile. As a result, the Court will deny Plaintiff's Motion to File an Amended Complaint.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 23) is GRANTED. Additionally, Plaintiff's Motion to File an Amended Complaint (ECF No. 26) is DENIED as futile. Counts I and II of Plaintiff's Complaint will be DISMISSED. A separate Order will follow.


<u>May 14, 2020</u>                                          _____/s/_____
Date                                                                    A. David Copperthite
                                                                              United States Magistrate Judge